Please call the next case. 215.13. Thank you. Counsel, you may proceed. Good afternoon, your honors. May it please the court. Counsel, my name is Thomas Duda. I represent the plaintiff in this case. This is Lieutenant Moran's decision of the Workers' Compensation Commission that I believe is erroneous as a matter of law. I think that the Workers' Comp Commission misapplied the holdings in Diaz, Pathfinder, and CTA and again elevated the burden of proof for public safety officers to that above and beyond persons of reasonable sensibilities. The standard of review in my opinion applicable to this case is identical to the standard of review that was articulated by this court in the Diaz case. The court enunciated a standard where it viewed that the interpretation of Pathfinder was purely one of law to be reviewed de novo and if the facts of the case became relevant, that the facts were essentially undisputed with undisputed inferences which is also reviewed de novo. Should this court find that Manifest Wade well actually I don't think Manifest Wade could ever apply. Why would Manifest Wade never apply to a case like this? To this case because at the most this case would involve application of the facts to the law which is a mixed question of law and fact which would be the clearly erroneous. The Supreme Court has never applied it to workers' compensation cases and subsequent to the Supreme Court has declined to use clearly erroneous as a standard review although in Belvedere they said it's supposed to be applicable only to administrative review actions. I actually think I have seen a comp case where they judge Hudson wrote it and that we have retreated from it on many occasion thereafter. It's still there. It's still there. What was the name of that case? Zodera. Counsel in regards to the standard in your urgent de novo standard review what are the undisputed inferences here? Well everything that occurred at this fire scene is undisputed. It's undisputed that the lieutenant was the incident commander, that he was in charge completely of the scene, that he's the one who gave the order for the firefighters to all the firefighters to engage in the activities they did. He gave the order to the firefighters who went. Did the interior attack? What about the question of whether or not a claimant suffered a sudden severe emotional shock? Isn't that an inference that you're suggesting needs to be drawn in order to apply pathfinder here? No. I don't think that's an inference. I think that that's an established fact. On two bases. Basis number one is that he was immediately ordered by the employer to be seen by a psychologist who personally testified that this was a sudden unforeseen traumatic event and above the can not only of public, of general sensibilities but of firefighters generally. Dr. McManus was confronted in his testimony by cross-examination that said, well doctor, firefighters aren't they exposed to life and death situations all the time? They come across people who are dead and he said this is very different. This is your subordinate, this is your co-worker, and when a colleague dies, that is far more traumatic than any other. But the second and more important objective evidence that there's no inference to be drawn is that Dr. McManus administered an MMPI test within a month and a half of these events and the test disclosed on the scale that the plaintiff had been exposed in the recent past to a traumatic event. Well, both doctor, there's no contrary medical testimony, both doctors who examined him said he suffered from post-traumatic stress disorder from this event. That's correct. Well, let's assume that you're correct about that, but there's something else I do want to ask you because you talked about the test in Pathfinder and the General Motors Parts case is quoting the Pathfinder and says the court held in Pathfinder the recovery is limited to a narrow group of cases in which the employee suffers a sudden severe emotional shock, okay, which you argue you have, which results in immediately apparent psychic injury. But this, to my mind, bears on the standard of review. And the court goes on to say, and this event is precipitated by an uncommon event of significantly greater proportion or dimension than that to which the employee, in this case the firefighter, would otherwise be subjected to in the normal course of employment. How is that something that doesn't have inferences? Because in this case, the village of Homewood number one changed the entire way that they retreated from the fire scene. Dr. McManus was contacted at the time of the event Dr. McManus said that this is such a traumatic event, you have to remove the firefighters at this scene immediately. They abandoned their equipment, they did not retreat with the hose, they left the engines there, they were taken by the police to the village police department where critical incident debriefing counselors... We're going to spend all your time on that. No, I understand. You're saying very clearly, and you have reasons facts and inferences you believe are undisputed. I'm sure your opponent probably is not going to concede to that and have some... Go ahead. There's no dispute or inference that if a fire department for the first time in the history of the department closes for two weeks in order to let the employees who suffered this traumatic event recover, I think it's undisputed that this is an unforeseen traumatic event and that in this instance, based on the undisputed medical testimony, led to a psychological condition of post-traumatic stress disorder. The interesting thing about the facts of this case are, and the efforts by the village to dispute them, is in the Diaz case, the danger was presented directly to the police officer. He's the one that the toy gun was pointed at. But the interesting thing is if you look at Pathfinder, the victim in Pathfinder was not personally at risk at all. The victim in Pathfinder had no relationship other than a co-worker relationship with the individual that she pulled the hand from the punch press. In this instance, in the case of Lieutenant Moran, he was in charge of the scene. He was responsible for delegating authority to the firefighters to enter the building. He is the one who saw the victim being removed from the building, and he made a critique of which paramedic was going to be providing resuscitative services. As the incident commander, he is the one who had realized that the firefighter who eventually was deceased had driven the ambulance  ambulance that could take him to the hospital to render whatever first aid there was. He was given debriefing the very evening that this event occurred. I think it's a much stronger case than Diaz. Now the commission, the arbitrator was reversed, or was sustained, and the commission did remove a sentence from her opinion that really made it clear that she refused to follow the opinion in Diaz. The commission, however, did not explain what the remaining findings how the remaining findings fit within their pattern of decision. They just removed that one sentence from the opinion. I did indicate that I think it's significant that this is a traumatic event by virtue of the fact that the village closed down its operations for a period of two years. I think it's important that the clinical psychologist who rendered an opinion in this case is not a clinical psychologist that the plaintiff himself chose. It's a doctor who oversaw the transaction from day one, had treated all the firefighters who had psychological issues from this event, and he is a psychologist who treated the plaintiff up through the year 2011. Counsel? Yes. In reviewing the arbitrator's decision, I just could not determine what the decision was based on. First, I couldn't quite determine specifically what the arbitrator had determined in regards to accident, but I think in general the arbitrator found no accident here. But I could not determine the basis for that determination. In your brief at page 20, you say the arbitrator's legal conclusion that Moran did not sustain an accidental injury because he was not physically injured and was not in the burning building is contrary to the law recited by the court in Diaz. Is that what the arbitrator determined here? Yes, in appendix 11. It says, comparing the facts and holdings of the cases cited above, the arbitrator specifically notes that the petitioner did not sustain a physical injury on March 30, 2010, or at any time thereafter. He was not inside the house. He did not witness the death of the co-worker. He was not involved in rescue efforts. Those are factual findings as opposed to any of the basis supporting the decision. So again, I'm trying to figure out what is it that the arbitrator used to determine no accident here? What was the basis? The arbitrator said, and I must tell the court, this was removed from the commissions affirming her opinion. She stated, quote, the arbitrator also notes that the cases are employment specific, and in the context of firefighters and police officers establishing trends to deny recovery for post-traumatic stress disorder to first responders. And that's on appendix A2, and that's a sentence taken from the commissions decision, which they removed from the arbitrator's decision. And it's the opposite of what Diaz says. I'm sorry? What the arbitrator stated is the opposite of what Diaz says. That came from her decision, and that's exactly the opposite. It's not a comparison between the event to which a firefighter succumbed versus other firefighters. It's the event the firefighter succumbed to versus a reasonably sensible individual. Is Diaz consistent with Pathfinder and Metal Metal? Yes. Do you think so? Yes. Pathfinder says it's limited to a narrow group of cases in which the employee suffers a sudden severe emotional shock which results in immediately apparent psychic injury and is precipitated by an uncommon event of significantly greater proportion or dimension than that to which the employee would otherwise be subjected in the normal course of employment. That's not Pathfinder. That's General Motors. I think General Motors is no longer good law. The question becomes if that's the interpretation of Pathfinder and General Motors is still good law, then it's at odds with Diaz because this quotation clearly is employment related. So in other words, policemen and firemen can't claim psychic injuries because they see somebody get run over by a car or a fireman can't do it where an individual might be able to do it because a policeman deals with it or a fireman deals with it every day. So I suppose my real question is Well, Diaz is post-General Motors. No, I understand that. But I'm back to the basic question of what did Pathfinder actually say? Pathfinder said, and I actually wrote this down at the beginning of my notes if I can find it, An employee who suffers a sudden, severe emotional shock traceable to a definite time, place, and cause which causes psychological injury or harm has suffered an accident within the terms of the act. The activity must be engaged, the employee must be engaged in employment at the time and place of the precipitating act and the occurrence, it must be an occurrence that presents a work-related risk. That's out of Pathfinder. And I think the distinction between Pathfinder and cases that have found no accident is the difference between a single, sudden, intensely traumatic event versus a chronic, irritant, long-term personnel employment dispute that is customary in the workforce generally. And those are always the distinctions that I see. But no matter where the line exists, what happened to Lieutenant Moran is far on the compensable side of the line. He was the one who was responsible for giving the order and Dr. McManus testified that when he first saw him, he was quote, overwhelmed with a feeling of guilt that a subordinate under his supervision had passed away. I already covered I think the way the respondent reacted to this event reflects its severity, it reflects its uniqueness. There was some issue raised in the brief of the village as to the timing of the psychological treatment that Lieutenant Moran undertook. And I really have two things to address to that. Number one... Your time is up. Well, I'll address it at a later date. In your reply. Thank you. Counsel may respond. Thank you. Good afternoon. Danny Larkin on behalf of the village of Homewood. May it please the court. To address a couple of things first that Mr. Duda stated so that we don't lose track of that. He keeps telling us that the village shut down its operations for two weeks. The village didn't shut down their fire department. They used an emergency operation plan. Other departments were there for about one week to respond to their calls with their apparatus. Even if that was true, does that necessarily establish the effect on the claimant? No, it does not. I'm trying to see the connection. It does not. It's just a correction as to what counsel has told us. The timing, and again we're looking at a comparative of what happened in this case to what happened in DI's, what happened in Pathfinder, and what happened in CTA. Pathfinder, we all know, was a woman in a plant that saw another injury from another employee. Hand was amputated. She fainted. Right then and there on the spot. Immediate. Pathfinder says a sudden immediate severe emotional shock resulting in an immediate reaction. That's what happened in Pathfinder. That's different than what we have here. CTA... Does Pathfinder say an immediate reaction? I believe it says an employee suffers a sudden severe emotional shock traceable to a definite time, place and cause, which causes psychological injury or harm. Now, the part you just added there comes from General Motors, and we specifically rejected in Chicago Transit Authority that Justice Holdridge wrote the idea that there had to be an immediate injury. In fact, I think in that case, she didn't suffer an injury until a month or more later. In Pathfinder? CTA. Actually, in CTA, when you look at the facts in CTA, it says that the bus driver watched him die at the scene. She went back to the terminal, and about four hours later, there was an onset of symptoms. So they talk about a few hours later or four hours later in different places in the CTA case. And then it also says that she was subsequently unable to drive a bus as a result of this. Just the point is, Pathfinder, nowhere in the rules set forth in Pathfinder does it require an immediate injury. No, it says sudden. It says a sudden event traceable to a specific time, place and cause that then causes injury. And in Diaz, again, it's distinguishable because in Diaz, he has a panic attack three days later. Again, traceable to the sudden severe emotional shock. In this case, the fire was on March 30, 2010. The first visit to Dr. McManus was on April 23, 2010. The first visit in CTA was six weeks. That's correct. But in CTA, the difference is that within four hours, she was complaining and she was noticing that she had some symptoms and I don't remember if they said she was nauseous or just depressed over it. But that again was something that I looked at as a distinguishable factor from what we have in this case. And then when you look at what happened at trial, and it's cited in my brief and it's clear in the record, we know he was not in the house. We know that he was not involved in the rescue and resuscitation events, even though counsel indicates in his reply brief that he was. But Mr. Moran's testimony was the only thing he did, walked around, called on the radio, made some decisions until Chief Casper from another town arrived at the scene and took over the operation at that point. So when you look at what the facts are in Moran, compare that to Diaz, to Pathfinder, and to CTA, it's clear we're talking about two separate, two distinct and separate kinds of events and fact patterns. And I think that the commission... So you're saying there wasn't absent in this instance a sudden event? Well, there was a sudden event with the fire and somebody dying in the fire and other firefighters getting injured. Well, a fireman goes to fire, so a fire can't be a sudden event. I mean, it's what they do. Yes. So what would be the sudden event in your mind that's missing in this fact pattern? There is no sudden event that affected Officer Moran, or Lieutenant Moran. And he didn't have an effect or an evaluation. But if there was to be one, what would it be, I mean, that would change this? He would have a panic attack at the scene. He would need to be in such emotional shock or distress that he would go from the fire seat to the hospital. He would say something to the fire chief or somebody else at the village. What is that language in Pathfinder? What's the object of that? A sudden... Pathfinder says sudden, severe, emotional shock. Sudden... So it's not referring to the event. It's referring to the reaction to the event. And it's for these reasons that we believe that the arbitrator, the Illinois Workers' Compensation Commission, and the Circuit Court are correct, and we ask that you affirm their decision. Thank you. Okay. Thank you, Counsel. Counsel, you may reply. May it please the Court. The sudden event was the flashover and the screaming of Firefighter Korpus, that Firefighter Cary is still inside and he's trapped inside. And the sending of Hazelcrest Firefighters to retrieve Firefighter Cary pulling from the building. The opposing counsel says it's not the event, it's the reaction to an event. I think in this case we have a sudden unexpected event, which is a flashover of Firefighter Trapp being pulled from the building. Do you understand the distinction that we're making here? Yes. What is the reference to a sudden what does Pathfinder say in its language? A sudden what? I read it to the Court. Yeah, I know you did, and so did opposing counsel, and for the life of me, I can't find it. It's a sudden severe emotional shock traceable to a definite time and place. Okay, traceable to a definite time and place, but suddenness and all that refers to the reaction of the claimant. I think the claimant underwent counseling immediately the day of the incident, and the MMPI establishes that he underwent a psychological trauma at this particular occurrence. On the basis of what? What's the evidence that he did it? The evidence is his reaction. What's the evidence of his reaction? I'm sorry? The reference is not the event, but the individual's reaction to an event. Is the suddenness. I understand. Okay. I mean, he didn't collapse, but he was recorded later on. He immediately sought treatment. It is true he didn't see a doctor until April 25th, but he began seeking treatment within two weeks of this event. What do you make of this language? I think this is not disputed in Penn Finder or General Motors. A sudden, you're talking about severe emotional shock, which results in immediate apparent psychic injury. So I think he's asking, what was the immediate apparent psychic injury here? Immediate apparent psychic injury. That's General Motors. That comes out of General Motors. Please, please, we reject it in CTA. The concept of immediate reaction to this, well, he gave up incident command when they took the firefighter away, and he testified about the debriefing that he underwent that day, and he talked about that he was, and he sent an email to the chief. You know, I'm having problems. I need to see someone. You're setting it up for other people. Why not for me? Must the psychological injury be readily apparent in order for there to be recovery? No. No. I'm not sure what the court means by readily apparent. Well, does it have to be immediate, or can it happen days later, so long as it's traceable to that event? A, I don't think it need to be readily apparent to third parties, meaning something doesn't need to happen that everyone acknowledges, such as fainting. I don't think fainting is required. And secondly, I don't think the event has to be on the day of the shock. It can be delayed, such as Officer Diaz. Officer Diaz didn't show any reaction for three days. That's where Chicago Transit Authority held, wasn't it? Specifically. That she can recover even if the resulting psychological injury doesn't manifest itself until sometime after the shock. Her first treatment was May 28, 2010, which was about three and a half months, and she had terminated. The other point I wanted to make is, it is true that the first visit with Dr. McMahons was April 25th, but the plaintiff's seeking care was much, much, much closer to the actual event. Thank you very much for your attention. Thank you, Counsel Bull, for your arguments in this matter. It will be taken under advisement and a written disposition shall issue.